UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KATRINA LYNN DANFORTH,<br><br>Defendant. | Case No. 2:18-cr-00398-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
|---|---|

# INTRODUCTION

Before the Court is Defendant's Motion to Withdraw Guilty Plea to Count 5 (Dkt. 33) and her Motion for Dismissal or Merger of Counts 2 through 5 of the Indictment (Dkt. 34). For the reasons explained below, the Court will grant both motions.

# BACKGROUND

In December 2018, Danforth was charged with five counts of violating 18 U.S.C. § 1958 – the federal murder-for-hire statute. Each count refers to a separate use of the mail or telephone during an alleged murder-for-hire plot targeting a single victim. Danforth pleaded guilty to Counts 1 and 5 of the Indictment, and the government agreed to move to dismiss the remaining counts. A pre-sentence investigation report was prepared. Sentencing was scheduled for December 2, 2010

and then continued to January 22, 2020.

Before the rescheduled sentencing hearing, Danforth moved to withdraw her guilty plea to Count 5 and to dismiss Counts 2, 3, 4, and 5 or, alternatively, to merge those counts into Count 1. Danforth remains prepared to plead guilty to Count 1 of the Indictment and she wishes to be sentenced on that count. But she argues that the government should not have been able to charge her five times for what is essentially a single crime.

## ANALYSIS

1. **Motion to Withdraw Guilty Plea to Count 5**

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty prior to the imposition of sentence if she "can show a fair and just reason for requesting the withdrawal." Although a defendant is not permitted to withdraw her guilty plea "simply on a lark," *United States v. Hyde*, 520 U.S. 670, 676-77 (1997), the "fair and just" standard is generous and must be applied liberally. *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008). "Prior to sentencing, the proper inquiry is whether the defendant has shown a fair and just reason for withdrawing his plea even if the plea is otherwise valid." *United States v. Davis*, 428 F.3d 802, 806 (9th Cir. 2005).

In the Ninth Circuit, "'fair and just reasons' for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening

circumstances, *or any other reason for withdrawing the plea that did not exist when the defendant entered his plea.*'" *Id.* (*as quoted in McTiernan*, 546 F.3d at 1167). Significantly, erroneous or inadequate legal advice may constitute a "fair and just" reason for withdrawal, even without a showing of prejudice, so long as the motion to withdraw is made before sentencing. *McTiernan*, 546 F.3d at 1167.

Here, counsel says Danforth pleaded guilty without having been made aware of a potential argument for dismissal or merger. In a nutshell, counsel says Danforth pleaded guilty to two charges of murder-for-hire (Counts 1 and 5), when, in actuality, the government should have only been able to charge her with one count. The upshot is that Danforth could potentially be sentenced to 20 years' imprisonment because the statutory maximum sentence on each count is 10 years. *See* 18 U.S.C. § 1958. If she pleads to just one count, her potential exposure to prison time is halved. *Id.*

Under these circumstances, the Court will allow Danforth to withdraw her guilty plea to Count 5. Practically speaking, the Court is not convinced that allowing Danforth to withdraw her plea to this count will make any difference. *First*, for the reasons explained below, the Court intends to grant Danforth's motion to merge Counts 2 through 5 into Count 1. As such, the pending motion to withdraw the guilty plea to Count 5 will be moot. *See Gvt. Response,* Dkt. 38, at 4.

*Second*, after having reviewed all the relevant sentencing materials, the

Court did not intend to sentence Danforth to more than 120 months' incarceration. Nevertheless, the point is that Danforth faces *potential* double exposure and she pleaded guilty without advice that there was an argument that she should have been charged with a single count of murder-for-hire – not five counts. Danforth has thus shown fair and just reasons to withdraw her plea to Count 5. The Court will grant the motion to withdraw her guilty plea to that count.

2. **Motion to Dismiss or Merge Counts 2 through 5**

Defendant next argues that the Court should either dismiss Counts 2 through 5 of the Indictment or merge them into Count 1. As noted, the government charged Danforth with five counts of Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire, in violation of 18 U.S.C. § 1958(a). All counts relate to defendant's plot to arrange for the murder of R.H. Counts 1, 2, 3, and 5 charge Danforth with using a telephone on October 20, November 9, November 10, and November 19, 2018, respectively. Count 4 charges Danforth with using the mail on November 10, 2018.

A prosecution is multiplicitous when the government charges a defendant two or more times for what is essentially a single crime. *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005). Danforth argues that the proper unit of prosecution under 28 U.S.C. § 1958(a) is an overarching plot to murder; hence she argues that she is guilty of just one crime. The government argues that the proper

unit of prosecution is every use of the mail or telephone with the intent that a murder-for-hire be committed – regardless of whether each phone call and letter related to a single plot to murder a single victim.

The Ninth Circuit has not decided this question and authority is sparse. The First and Sixth Circuits are the only circuits to have addressed this issue and both concluded that "'separate phone calls which relate to one plan to murder one individual constitute only one violation of 18 U.S.C. § 1958.'" *United States v. Gordon*, 875 F.3d 26, 35 (1st Cir. 2017) (quoting *United States v. Wynn*, 987 F.2d 354, 359 (6th Cir. 1993)). Note, however, that in an unpublished decision, the Sixth Circuit reached a contrary result. In *United States v. Ng*, 26 Fed. Appx. 452, 462 (6th Cir. 2001), the court held that "the plain language of the statute makes clear that the evil it intended to proscribe was the interstate travel and use of facilities in interstate commerce with intent that a murder-for-hire be committed."

For the reasons explained below, the Court concludes that the statute is ambiguous. As such, the Court will apply the rule of lenity to resolve the issue in Danforth's favor. *See generally United States v. Shabani*, 513 U.S. 10, 17 (1994) (rule of lenity applies when, after consulting traditional canons of statutory construction, the court is left with an ambiguous statute).

The analytical starting point is the language of 18 U.S.C. § 1958, which provides:

> Whoever . . . uses . . . the mail or any facility of interstate or foreign commerce, with intent that a murder be committed . . . as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value . . . shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

18 U.S.C. § 1958(a).

The statute lays out three elements of the crime: (1) the use of the mail or interstate or foreign commerce facilities (2) accompanied by an intent that a murder be committed (3) as consideration for the receipt of or promise to pay anything of pecuniary value. *See generally United States v. Ritter*, 989 F.2d 313, 321 (9th Cir. 1993) (listing the three elements of the crime, though not in the context of a multiplicity argument). Thus, the government has a solid argument that the crime is complete when a phone call is made or a letter is sent with the requisite intent.

But the problem is that after spelling out the three elements, the statute goes on to impose a graduated punished scheme: a maximum of 10 years' imprisonment for a violation that does not result in personal injury, a maximum of 20 years' imprisonment for a violation that does result in personal injury, and a maximum of death or life imprisonment if a murder is committed. This sort of a graduated punishment scheme "conveys a clear indication of Congress' apparent belief that

the greater the harm to the victim, the harsher the punishment should be for the offender." *United States v. Gordon*, 875 F.3d 26, 33 (1st Cir. 2017).

And therein lies the problem with the government's proposed unit of prosecution. In this case, for example, assume Danforth made a single call, arranged and paid for R.H's murder, and then never picked up the phone or used the mail again. If her plot partially succeeded, and R.H. suffered personal injury (but not death) as a result, Danforth would face a maximum sentence of 20 years. What actually happened, of course, is that Danforth's single plot to arrange for the murder of a single victim failed, but because she made four phone calls and sent a note via mail, she was indicted on five counts of murder-for-hire. And if she were to be convicted on all five counts, she would face up to 50 years' imprisonment. "Such a result seems irrational when considered in light of the evident purpose of the statute's sentencing scheme." *Id.* Thus, when the statute is read in its entirety, both sides have defensible arguments regarding the proposed unit of prosecution.

Because the statute is susceptible of both the government's and the defendant's interpretation, the Court looks to legislative intent. Deciphering legislative intent is always difficult, and especially so in dealing with multiple-punishment or unit-of-prosecution issues. As Chief Justice Warren observed, "In every instance the problem is to ascertain what the legislature intended. Often the inquiry produces few if any enlightening results. Normally these [multiple-

punishment issues] are not problems that receive explicit legislative consideration." *Gore v. United States*, 357 U.S. 386, 394 (Warren, C.J., dissenting).

And so it is here. Congress did not explicitly address the unit-of-prosecution issue. Otherwise, both sides are able to find statements supporting their positions in the legislative history. *See Gordon*, 875 F.3d at 33 (observing "the Senate report[1] explaining the adoption of section 1958 gives comfort to both sides of this debate . . . ."). For example, the Senate Report explaining the adoption of 18 U.S.C. § 1958 states that "the gist of the offense is the travel in interstate commerce or the use of facilities of interstate commerce or of the mails with the requisite intent and the offense is complete whether or not the murder is carried out or even attempted." S. Rep. No. 98-225, at 306 (1984) as reprinted in 1984 U.S.C.C.A.N. 3182, 3484. But the statement is not all that helpful; it doesn't directly address the unit-of-prosecution question.

The government also points out that the murder-for-hire statute was modeled after the Travel Act, 18 U.S.C. § 1952. *See* S. Rep. 225 at 304. A conviction under the Travel Act requires the defendant to "travel[] in interstate or foreign commerce or use[] the mail or any facility in interstate commerce, with intent to

---

[1]S. Rep. No. 98-225, at 304 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3484.

> (1) distribute the proceeds of any unlawful activity; or
>
> (2) commit any crime of violence to further any unlawful activity; or
>
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity.

28 U.S.C. § 1952(a). In *United States v. Polizzi,* 500 F.2d 856, 897-98 (9th Cir. 1974), the Ninth Circuit concluded that the appropriate unit of prosecution was each act of travel or use of interstate commerce, even if each act was committed in furtherance of a single unlawful activity.

Critically, though, to violate the Travel Act, a defendant not only must travel or use interstate commerce, the defendant must also subsequently "perform or attempt to perform" one of the three acts specified above – *i.e.,* distribution of proceeds, commission of crime of violence, or otherwise promote, manage, establish or carrying on unlawful activity. *See* 28 U.S.C. § 1952(a). The same is not true with respect to the murder-for-hire statute, so *Polizzi's* logic does not apply. *See generally Gordon*, 875 F.3d at 36 ("This missing element – the requirement of a subsequent act – makes it surpassingly difficult to believe that Congress intended for the units of prosecution under these two laws to be the same.").

For all these reasons, the Court is persuaded that the statute is ambiguous. The Court will therefore resort to the rule of lenity, which generally provides that

**MEMORANDUM DECISION AND ORDER - 9**

ambiguities in criminal laws should be resolved against imposition of a harsher punishment. *See generally United States v. Granderson*, 511 U.S. 39, 54 (1994) ("In these circumstances – where text, structure, and history fail to establish that the Government's position is unambiguously correct –we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor."). The Court will therefore grant Danforth's motion and exercise its discretion to merge Counts 2 through 5 into Count 1.

## ORDER

**IT IS ORDERED that:**

1. Plaintiff's Motion to Withdraw Guilty Plea to Count 5 (Dkt. 33) is **GRANTED.**

2. Plaintiff's Motion for Dismissal or Merger of Counts 2 through Five of the Indictment (Dkt. 34) is **GRANTED.** Counts 2 through Five are **MERGED** into Count One of the Indictment.

DATED: February 13, 2020

_____
B. Lynn Winmill
U.S. District Court Judge